**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| TINA M. CLARK, | ) | CASE NO. 1:17CV500 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Tina M. Clark, ("Plaintiff" or "Clark"), challenges the final decision of

Defendant, Nancy A. Berryhill,[1] Acting Commissioner of Social Security ("Commissioner"),

denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act, 42 U.S.C. § 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C.

§ 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an

automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons

set forth below, the Magistrate Judge recommends that the Commissioner's final decision be

AFFIRMED.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social
Security.

# I. PROCEDURAL HISTORY

In March 2010, Clark filed an application for SSI, alleging a disability onset date of

January 1, 2004, and claiming she was disabled due to a chronic gastrointestinal disorder,

bronchitis, and back pain. (Transcript ("Tr.") 174, 191.) The applications were denied initially

and upon reconsideration, and Clark requested a hearing before an administrative law judge

("ALJ"). (Tr. 88.)

On September 21, 2015, an ALJ held a hearing, during which Clark, represented by

counsel, and an impartial vocational expert ("VE") testified. (Tr. 36.) On December 30, 2015,

the ALJ issued a written decision finding Clark was not disabled. (Tr. 12-34.) The ALJ's

decision became final on September 21, 2016, when the Appeals Council declined further

review. (Tr. 5.)

On March 10, 2017, Clark filed her Complaint to challenge the Commissioner's final

decision. (Doc. No. 2.) The parties have completed briefing in this case. (Doc. Nos. 12, 13, 14.)

Clark asserts the following assignments of error:

> (1) The ALJ failed to explain the weight given to the opinions of the consulting
> psychological examiner, William Schonberg, Ph.D.

> (2) The ALJ failed to explain the weight given to the opinions of the state agency
> psychological consultants, which were more limiting than the ALJ's own
> determined RFC. Similarly, the ALJ's step five finding was not supported by
> substantial evidence because he failed to incorporate all of Clark's mental health
> limitations into the hypothetical question proffered to the vocational expert.

(Doc. No. 12.)

## II. EVIDENCE

### A.    Personal and Vocational Evidence

Clark was born in March 1968 and was 47 years-old at the time of her administrative hearing, making her a "younger" person under social security regulations.  (Tr. 25.)  *See* 20 C.F.R. § 416.963(c).  She has a high school education and is able to communicate in English.  (*Id.*)  She has no past relevant work.  (*Id.*)

### B.    Medical Evidence

As Clark's ground for relief relate solely to her mental impairments, the Court's recitation of the medical evidence will be limited to those impairments.[2]  The only medical treatment records referenced by either party consist of the treatment notes of Gary J. Frantz, M.D., Clark's primary care physician.  On April 24, 2012, Clark visited Dr. Frantz, reporting worsening pain in her legs and pelvic area since a motor vehicle accident.  (Tr. 1053.)  Dr. Frantz noted Clark had both anxiety and depression.  (Tr. 1054.)  He prescribed pain medications, anti-inflammatory medications, and Xanax.  (Tr. 1055.)  Clark returned to Dr. Frantz on May 21, 2012.  (Tr. 1059.)  At that time, Dr. Frantz listed Generalized Anxiety disorder as one of Clark's diagnoses.  (*Id.*)  He renewed Clark's Xanax prescription.  (Tr. 1061.)

Clark continued to visit Dr. Frantz on a monthly basis for medication renewals.  (Tr. 1071, 1074, 1083.)  On September 6, 2012, Clark indicated her pain and anxiety were controlled on medication.  (Tr. 1076.)  On November 21, 2012, Clark denied any anxious or fearful thoughts, but indicated she was experiencing panic attacks.  (Tr. 1085.)  Dr. Frantz renewed her

---

[2]    The Court further notes its recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

Xanax prescription.  (Tr. 1088.)

On January 11, 2013, Clark reported her anxiety was controlled, and relayed "functioning [was] not difficult at all."  (Tr. 1090.)  A month later, on February 11, 2013, Clark indicated she was having difficulty functioning.  (Tr. 1094.)  She reported "difficulty concentrating, difficulty staying asleep, diminished interest or pleasure, easily startled, excessive worry, fatigue, decreased libido, poor judgment, racing thoughts, and restlessness."  (*Id*.)  Dr. Frantz prescribed Clark alprazolam, a generic version of Xanax.  (Tr. 1097.)

Clark continued to visit Dr. Frantz on a monthly basis in 2014.  On August 11, 2014, she indicated her back pain was controlled on medication.  (Tr. 1204.)  Her psychiatric examination was normal.  (Tr. 1207.)  On September 23, 2014, her psychiatric examination was again normal. (Tr. 1212.)  Dr. Frantz renewed her alprazolam.  (Tr. 1213.)  On November 20, 2014, Dr. Frantz noted Clark had anxiety, but her psychiatric examination was normal.  (Tr. 1221.)  He again listed her diagnosis as generalized anxiety disorder, and prescribed alprazolam.  (Tr. 1222.)  He subsequently renewed the prescription on December 6, 2014 and January 22, 2015.  (Tr. 1226, 1232.)

On February 25, 2015, Clark indicated her head felt "funny."  (Tr. 1234.)  She also reported insomnia.  (Tr. 1237.)  Her psychiatric examination was normal, and Dr. Frantz renewed her medications.  (*Id.*)  Clark again had a normal psychiatric examination on March 27, 2015. (Tr. 1241, 1242.)  On June 12, 2015, Clark indicated she was able to travel and care for herself. (Tr. 1249.)  Dr. Frantz renewed her alprazolam.  (Tr. 1253.)  On July 9, 2015, Clark returned for her pain and anxiety medications, and indicated her pain was "fairly controlled".  (Tr. 1254.)  Dr. Frantz renewed her pain medications and alprazolam.  (Tr. 1257.)

## C.     State Agency Reports

### 1.     Mental Impairments

On August 5, 2010, Clark underwent a consultative examination with William B. Schonberg, Ph.D.  (Tr. 918-922.)  She described a traumatic childhood and indicated she had developed anxiety in connection with the abuse she suffered.  (Tr. 918.)  She reported involvement in a serious motor vehicle accident in 2009, and relayed she had suffered memory loss due to this accident.  (Tr. 919.)  Clark also described a history of cocaine use, but denied treatment for chemical dependency.  (*Id.*)  During the interview, Clark was "tearful" and "somewhat dramatic."  (Tr. 920.)  She reported depression, frequent crying, and increased anger.  (*Id.*)  She "related in a somewhat anxious but sensible manner."  (*Id.*)  Clark described panic attacks when she was under stress, but denied fear of leaving her home.  (Tr. 921.)  During the examination, she was able to "recall recent and past events without obvious difficulty."  (*Id.*)  She could make change, but "could not fluently subtract Serial 7s."  (*Id.*)

Based upon this examination, Dr. Schonberg diagnosed Clark with Dysthymic Disorder, Anxiety Disorder, and Histrionic Traits, no disorder.  (*Id.*)  He assigned her a Global Assessment of Functioning[3] ("GAF") score of 55, indicating moderate symptoms.  (Tr. 922.)  Dr. Schonberg

---

[3]     The GAF scale reports a clinician's assessment of an individual's overall level of functioning.  An individual's GAF is rated between 0-100, with lower numbers indicating more severe mental impairments.  A GAF score between 41 and 50 indicates serious symptoms or any serious impairment in social, occupational or school functioning.  A score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  A recent update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice."  *See Diagnostic and Statistical Manual of MentalDisorders* (DSM-5) at 16 (American Psychiatric Ass'n, 5th ed., 2013).

noted while Clark indicated "forgetfulness problems since her car accident, she did not demonstrate such during the interview." (*Id*.) He then provided the following opinion regarding Clark:

- Her "mental ability to understand, remember, and follow directions is mildly impaired," noting, she "did not demonstrate any comprehension or memory problems of a significant nature during the assessment."

- Her "mental ability to maintain attention, concentration, persistence, and pace to perform simple, repetitive tasks is moderately impaired," noting her "pace and persistence were below average."

- Her "mental ability to relate to others including fellow workers and supervisors is moderately impaired."

- Her "mental ability to withstand the stress and pressure associated with day to day work activity is moderately impaired."

(*Id*.) Dr. Schonberg concluded Clark "does have the mental ability to perform simple repetitive work tasks, although she believes she would be forgetful in so doing." (*Id*.)

On August 10, 2010, state agency physician Karla Voyten, Ph.D. reviewed Clark's medical records and completed a Psychiatric Review Technique ("PRT") and Mental Residual Functional Capacity ("RFC") assessment. (Tr. 925-941.) She concluded Clark had (1) mild restrictions in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation. (Tr. 939.) With regard to Clark's mental functional limitations, Dr. Voyten found Clark was not significantly limited in her abilities to (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) make simple work-related

decisions; (5) ask simple questions or request assistance; (6) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (7) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (8) be aware of normal hazards and take appropriate precautions; (9) travel in unfamiliar places or use public transportation; and (10) set realistic goals or make plans independently of others. (Tr. 925-926.) She found Clark was moderately limited in her abilities to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) sustain an ordinary routine without special supervision; (5) work in coordination with or proximity to others without being distracted by them; (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (7) interact appropriately with the general public; (8) accept instructions and respond appropriately to criticism from others; and (9) respond appropriately to changes in a work setting. (*Id*.) Dr. Voyten explained the basis of her conclusions as follows:

> Alleging anxiety, physical assessed separately. HS grad in reg classes. admits substance use history but none for last 2 yrs. had lost a past job due to cocaine use, but again, [claimant] reports none for last 2 years. No psych [inpatient stays] or [outpatient] treatment. [Claimant] has been taking Xanax for about 15 years. + work history, [claimant] is currently married, has children but they are grown.

> Psych [consultative examination]: appropriate appearance and grooming, tearful during interview and somewhat dramatic as well. Admits to several [symptoms] of depression and anxiety. [Mental status examination] was [within normal limits] other than slightly depressed mood. Sensorium and cognitive function testing was normal except for her inability to fluently subtract serial 7's, examiner estimated [claimant] to be in near average range. Concerned with her physical health.

> [Activities of daily living] reportedly include ability to do cleaning and

cooking as she physically can, enjoys gardening and shopping as able, might visit with her children at times.

**Given [medical evidence of record] in file, [claimant] would appear capable of following simple instructions to perform simple and many moderately complex repetitive tasksk[sic] in an relatively static environment with superficial social interaction.**

[Claimant's] statements overall are partially credible - e.g. [claimant] reports a limping gait but [treating source] notes normal gait. Weight given to [consultative] examiner's opinions.

(Tr. 927) (emphasis added).

On December 1, 2010, state agency physician Alice Chambly, Psy.D., reviewed Clark's medical records. (Tr. 982.) She noted Clark had "alleged worsening panic attacks and depression. However, there is no [medical evidence of record] documenting evidence of such worsening." (*Id.*) She affirmed Dr. Voyten's assessment. (*Id.*)

## 2.    Physical Impairments

On January 24, 2011, Clark underwent a physical consultative examination with Sushil M. Sethi, M.D. (Tr. 983-985.) She reported a 2009 motor vehicle accident, in which she "broke her back." (Tr. 983.) She reported lower back pain, but denied any back surgery or injections. (*Id.*) She described breathing issues and depression. (*Id.*) On examination, Clark "appears to be very sedated and slow and under the influence of medications." (Tr. 984.) She had normal range of motion in her hips and ankles, but decreased range of motion in her knees. (*Id.*) She could not squat, she was not using a cane, and her gait was normal. (*Id.*) Her grasp, pinch, manipulation, and fine coordination were all normal. (Tr. 985.) Her cervical and lumbar spine were tender, with a decreased range of motion. (*Id.*) Her thoracic spine range of motion was normal, and her straight leg raising test was negative. (*Id.*)

Based upon this examination, Dr. Sethi opined Clark's ability to sit, stand, walk, lift, carry, and handle objects "may be limited to medium labor." (Tr. 985.) He further opined "she can sit 4-6 hours, walk 3-4 hours, and stand 3-4 hours in an 8-hour shift. She can carry 15-20 [pounds] frequently and 30-50 [pounds] occasionally. " (*Id*.)

On August 10, 2010 state agency physician W. Jerry McCloud, M.D. reviewed Clark's medical records and completed a Physical RFC assessment. (Tr. 943-950.) Dr. McCloud determined Clark could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; stand and/or walk for a total of about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday. (Tr. 944.) He further found Clark had an unlimited capacity to climb ramps, stairs, ladders, ropes, and scaffolds. (Tr. 945.) Dr. McCloud found no limitations in Clark's abilities to balance, stoop, kneel, crouch, and crawl. (Tr. 945.) Finally, Dr. McCloud determined Clark should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 947.)

On January 26, 2011, state agency physician David Brock, D.O. reviewed Clark's records and adopted the findings of Dr. McCloud. (Tr. 991.)

**D.     Hearing Testimony**

During the September 21, 2015 hearing, Clark testified to the following:

- She graduated from high school. (Tr. 42.) She drives, but not on a daily basis. (Tr. 41.) She has difficulty sleeping through the night due to pain. (Tr. 52.) She relies on her husband to do the laundry and housework. (*Id*.)

- She last worked at InfoCision as a customer service representative. (Tr. 42.) She left this job due to her physical condition. (*Id*.)

- The main thing which prevents her from working is chronic pain in her neck and pelvic area. (Tr. 43.) She also has chronic bronchitis. (*Id*.) She can "hardly sit still" due to her back pain. (*Id*.) Her back pain is constant in nature. (Tr. 44.)

She will use a "hemi walker" when her pain is particularly bad. (Tr. 54.)

- She has abdominal adhesions and scar tissue in her pelvic region. (Tr. 46.) She has undergone multiple operations to remove this scar tissue. (Tr. 46.) She has abdominal pain and urinary incontinence. (Tr. 47, 51.)

- She has fibromyalgia. (*Id.*) She described painful "knots" all over her body. (Tr. 48.) She has pain in her ankles, knees, and right arm. (*Id.*) She occasionally cannot lift her right arm at all. (*Id.*) She also has confusion and forgetfulness, which she attributes to her fibromyalgia. (Tr. 53.)

- She was in a motor vehicle accident in 2009. (Tr. 49.) She sustained fractures to her right arm, ribs and clavicles, and her lung collapsed during this accident. (*Id.*)

- She has taken narcotic pain medications for the past 10-15 years. (Tr. 49-50.) These medications impact her ability to concentrate. (Tr. 50.)

- She has frequent panic attacks. (Tr. 50.) She had multiple panic attacks prior to her hearing. (*Id.*) She takes Xanax for her anxiety, which she finds helpful. (Tr. 58.) Recently, she has been having panic attacks daily. (Tr. 59.)

- She feels overwhelmed. (Tr. 52.) She does not receive any mental health treatment. (Tr. 58.) She views her primary care doctor as a counselor, and testified he prays with her. (*Id.*)

The VE testified Clark had past work as a customer service representative (DOT #241.367-013, sedentary, SVP 5). (Tr. 61.) The ALJ then posed the following hypothetical question:

> If I asked you to assume the hypothetical person retained the functional capacity to perform light work,[4] as defined by the DOT and the regulations.

---

[4] "Light work" is defined as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 CFR § 404.1567(b). Social Security Ruling 83–10 clarifies that "since frequent lifting or carrying

But within that range of light work the individual would need to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, those types of things. And then because of some mental health issues, the individual would be limited to work that would be considered simple to moderately complex, repetitive tasks, but in a static environment with no more than superficial social interaction.

(Tr. 62.)

The VE testified the hypothetical individual would be able to perform several representative jobs in the economy, such as a routing clerk (DOT #222.687-022), a housekeeping cleaner (DOT #323.687-014), and a laundry press operator (DOT #363.685-010). (Tr. 62-63.)

### III. STANDARD FOR DISABILITY

A disabled claimant may be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe

---

requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off or on, for a total of approximately six hours of an 8–hour workday." SSR 83–10, 1983 WL 31251 (1983).

impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g)..

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since March 18, 2010, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; fibromyalgia; asthma; irritable bowel syndrome (IBS); obesity; affective disorder; anxiety disorder; and personality disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she would need to avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. Mentally, the claimant is limited to simple to moderately complex repetitive tasks, in a static environment, with no more than superficial social interaction.

5.      The claimant has no past relevant work (20 CFR 416.965).

6.      The claimant was born on March **, 1968, and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.      The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since March 18, 2010, the date the application was filed (20 CFR 416.920(g)).

(Tr. 17-27.)

## V.  STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are

supported by substantial evidence, the Court does not review the evidence *de novo*, make

credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*,

889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston*

*v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are

not subject to reversal, however, merely because there exists in the record substantial evidence to

support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing

*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203

F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion,

the decision of the Administrative Law Judge must stand if the evidence could reasonably

support the conclusion reached.") This is so because there is a "zone of choice" within which the

Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing

*Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by

substantial evidence, the Court must determine whether proper legal standards were applied.

Failure of the Commissioner to apply the correct legal standards as promulgated by the

regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281

(6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if

supported by substantial evidence, however, a decision of the Commissioner will not be upheld

where the SSA fails to follow its own regulations and where that error prejudices a claimant on

the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision even if there "is enough

evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

### A.      First Assignment of Error: Consultative examiner William Schonberg, Ph.D.

In her first assignment of error, Clark argues the ALJ failed to assign any weight to the opinion of consultative examiner William Schonberg, Ph.D.  (Doc. No. 12 at 1.)  She contends Dr. Schonberg's opinion is "significantly more limiting" than the RFC, as the "RFC allowed for the performance of tasks that were simple to moderately complex, while Dr. Schonberg opined that Plaintiff was limited to simple routine tasks. . . [and] moderately limited in her ability to maintain concentration, persistence, and pace even in the performance of simple routine tasks." (Doc. No. 12 at 8.)

Clark asserts this failure to explain the weight given to Dr. Schonberg's opinion is against "SSA's own regulatory guidelines for the assessment of medical opinion evidence."  (*Id.* at 9.) Thus, by failing to weigh Dr. Schonberg's opinion "it is unclear whether the ALJ intended to reject [the] opinions, in which case his analysis is unsupported by substantial evidence, or

whether the ALJ simply overlooked the contents of [the] opinion." (*Id*.)

The Commissioner acknowledges the ALJ did not explain the weight given to Dr. Schonberg's opinions. (Doc. No. 13 at 17.) However, she argues this oversight does not require reversal. She contends "it can be inferred that the ALJ gave significant weight to Dr. Schonberg's opinion," as the "opinion is generally consistent with the ALJ's RFC finding." (*Id.*)

The Commissioner further argues even if this omission did constitute an error, it was harmless in nature. (*Id.* at 18.) She notes Dr. Schonberg concluded Clark could perform "simple tasks," while the ALJ found she could perform "simple to moderately complex tasks." (*Id.* at 17.) The Commissioner argues these differences "had no effect on the outcome of the case," as "the jobs that the ALJ found Plaintiff could perform were unskilled jobs that only involved simple tasks." (*Id.* at 18.)

In formulating the RFC, ALJs "are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 C.F.R. § 404.1527(e)(2)(i). Nonetheless, because "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists," ALJs must consider their findings and opinions. *Id*. When doing so, an ALJ "will evaluate the findings using the relevant factors in paragraphs (a) through (d) of this section, such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions." 20 C.F.R. § 404.1527(e)(2)(ii). Finally, an ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician,

psychologist, or other medical specialist" unless a treating physician's opinion has been accorded controlling weight. *Id.*

However, the Sixth Circuit has held the failure to assign weight to the opinion of a consultative, non-treating source may not constitute reversible error if the ALJ decision is otherwise supported by substantial evidence. *See Dykes ex. rel. Brymer v. Barnhart,* 112 F. App'x 463, 468 (6th Cir. 2004) ("if the refusal to even acknowledge the opinion of a treating physician was harmless error in *Heston*, then the ALJ's failure in the present case to discuss thoroughly the opinion of a consultative examiner does not warrant reversal."); *Salter v. Comm'r of Soc. Sec.,* 2015 WL 1880393 at *8 (N.D. Ohio Apr. 24, 2015); *Peshe v. Comm'r of Soc. Sec.,* 2015 WL 6437216 at *12 (N.D. Ohio Oct. 22, 2015). *See also Pasco v. Comm'r of Soc. Sec.,* 137 Fed. App'x 828, 839 (6th Cir. 2005) (finding an ALJ did not err in failing to discuss a consultative examiner report, when the claimant did not explain how the report would support her disability claim.)

As noted *supra*, Clark underwent a consultative examination with William Schonberg, Ph.D., on August 5, 2010. (Tr. 918-922). Based upon this examination, Dr. Schonberg provided the following opinion regarding Clark:

- Her "mental ability to understand, remember, and follow directions is mildly impaired," noting, she "did not demonstrate any comprehension or memory problems of a significant nature during the assessment."

- Her "mental ability to maintain attention, concentration, persistence, and pace to perform simple, repetitive tasks is moderately impaired," noting her "pace and persistence were below average."

- Her "mental ability to relate to others including fellow workers and supervisors is moderately impaired."

- Her "mental ability to withstand the stress and pressure associated with day to

day work activity is moderately impaired."

(Tr. 922.)  Dr. Schonberg then concluded Clark "does have the mental ability to perform simple

repetitive work tasks, although she believes she would be forgetful in so doing."  (*Id.*)

> In the decision, the ALJ discussed Dr. Schonberg's examination as follows:

> On August 5, 2010, the claimant attended a psychological consultative
> examination administered by William Schonberg, Ph.D.  The claimant
> reported a history of abuse as well as symptoms of depression and anxiety
> with panic attacks for the past two years when stressed.  On mental status
> examination, the claimant maintained fair to good eye contact.  She was
> tearful during the interview and "somewhat dramatic."  Speech was normal,
> and thought processes were logical, coherent and goal-directed.  Mood was
> mildly depressed, and affect was congruent with her mood.  There were no
> signs or symptoms of a formal thought disorder.  Memory and interpret[sic]
> proverbs was intact but she could not perform serial seven subtraction
> "fluently."  Diagnoses were dysthymic disorder and anxiety disorder, not
> otherwise specified (Exhibit 28F).

(Tr. 18.)  The ALJ also referenced Dr. Schonberg's findings several other times in the body of

the decision, noting Clark's reported daily activities at the examination, her ability to interact

with Dr. Schonberg, and her ability to "concentrate and respond appropriately to questions during

the psychological consultative examination."  (Tr. 20, 22, 24.)  At no point in the decision did the

ALJ expressly state or weigh Dr. Schonberg's opinion.

> The ALJ formulated the following RFC:

> After careful consideration of the entire record, the undersigned finds that
> the claimant has the residual functional capacity to perform light work as
> defined in 20 CFR 416.967(b) except she would need to avoid concentrated
> exposure to fumes, odors, dust, gases, and poor ventilation.  **Mentally, the
> claimant is limited to simple to moderately complex repetitive tasks, in
> a static environment, and with no more than superficial social
> interaction**.

(Tr. 22) (emphasis added).

> The Court finds the ALJ's failure to explicitly assign weight to Dr. Schonberg's opinion

18

does not constitute reversible error. Similar to *Dykes*, the ALJ acknowledged the existence of a consultative examination, but did not assign it weight or provide a rationale for rejecting or adopting the opinion contained therein. *See Dykes,* 112 Fed. App'x at 468. Although the ALJ did not explicitly list the weight afforded to Dr. Schonberg's opinion, it is clear he considered the consultative examination, as he discussed the examination findings several times and at length in the decision. (Tr. 18, 20, 22, 24.) Specifically, the ALJ referenced Dr. Schonberg's findings when determining Clark did not meet a Listing at step three. (Tr. 20.) He noted Clark had reported a range of daily activities to Dr. Schonberg. (*Id*.) He also referenced Clark's "rather histrionic" presentation at the consultative examination. (*Id.*) He discussed how Clark was only "slightly withdrawn and had little difficulty responding to" Dr. Schonberg's questions. (*Id.*)

The ALJ again discussed the consultative examination at step four of the decision providing the following discussion:

> Mentally, as summarized above, the claimant was able to concentrate and respond appropriately to questions during the psychological consultative examination. Thought processes were logical and goal-directed, and the claimant was able to interpret proverbs. Memory was intact. Her treating/examining physicians did not report any significant difficulties understanding instructions and giving a cogent history. *Therefore, she is capable of performing not only simple, routine tasks but also moderately complex repetitive tasks.* Her tearfulness and depression would affect her ability to relate to others, but she would be able to relate on a superficial basis, as she has been able to do with her treating physicians, consultants, and at the hearing.

(Tr. 22) (emphasis added.) Based on the above, it is clear the ALJ acknowledged and discussed Dr. Schonberg's examination throughout the decision, and adequately explained why he found Clark could perform "moderately complex" tasks, as opposed to the "simple, repetitive" tasks opined by Dr. Schonberg. .

Even if the ALJ erred in failing to explicitly assign weight to Dr. Schonberg's opinion, the error is harmless, as the fundamental question is whether the ALJ decision is supported by substantial evidence. *See Dykes,* 112 Fed. App'x at 468. Here, a review of the medical record indicates the decision is supported by substantial evidence. Clark did not regularly treat with a mental health professional in any capacity. Rather, the entirety of her mental health treatment consisted of Xanax from her primary care doctor, Dr. Frantz. (Tr. 1054.) Dr. Frantz's treatment notes indicate a normal psychiatric examination on numerous occasions. (Tr. 1207, 1221, 1231, 1237, 1241.) Clark did report increased anxiety and panic attacks at times, but she also would indicate her mental health symptoms were controlled at other instances. (Tr. 1076, 1072, 1085, 1090, 1094.) During her consultative examination with Dr. Schonberg, she was "tearful" and "somewhat dramatic," but also could "recall recent and past events without obvious difficulty." (Tr. 920, 921.) Dr. Schonberg noted while Clark indicated "forgetfulness problems since her car accident, she did not demonstrate such during the interview." (Tr. 922.)

Clark argues Dr. Schonberg's opinion was "significantly more limiting" than the findings made by the ALJ. (Doc. No. 12 at 8.) The Court disagrees. While there are differences between the opinion of Dr. Schonberg and the RFC, those differences are minimal, and those differences that do exist were acknowledged and explained. Dr. Schonberg found Clark had mild to moderate limitations in several work-related areas, and concluded Clark "does have the mental ability to perform simple repetitive work tasks." (Tr. 922.) In the decision, the ALJ similarly found mild to moderate limitations at step three, and in the RFC limited Clark to "simple to moderately complex repetitive tasks, in a static environment, and with no more than superficial social interaction." (Tr. 22.) While the ALJ found Clark could perform tasks of a moderately

complex nature, and Dr. Schonberg limited Clark to simple tasks, the ALJ did explain why he reached a different conclusion. He noted that during the consultative examination, Clark was able to interpret proverbs, her memory was intact, and did not have any "significant difficulties understanding instructions and giving a cogent history." (Tr. 22.) The ALJ then concluded due to these objective findings, she was "capable of performing not only simple, routine tasks but also moderately complex repetitive tasks." (*Id.*)

Further, even if the ALJ's RFC deviates in some respects from Dr. Schonberg's opinion, this does not require reversal. *See Dykes,* 112 Fed. App'x at 468 ("the ALJ's failure in the present case to explain why he disregarded part of the opinion of the consultative examiner does not warrant remand."). As noted above, the ALJ explained why Clark could perform moderately complex, repetitive tasks, as opposed to simple, routine tasks, citing the objective observations of Dr. Schonberg. (Tr. 22.) In addition, Clark fails to establish that the adoption of Dr. Schonberg's opinion would result in a finding of disability. *See Pasco,* 137 Fed. App'x at 839. Clark fails to specify exactly which limitations should have been in the RFC, as to reflect to Dr. Schonberg's opinion. Clark also cites to no treatment records which would support greater limitations.[5] Indeed, Dr. Schonberg's opinion indicates mild to moderate limitations, and an ability to perform simple, repetitive work tasks. (Tr. 922.)

Clark further argues it is unclear if the ALJ "intended to reject" Dr. Schonberg's opinion, or "simply overlooked the contents of [the] report." (Doc. No. 12 at 9.) This argument is also without merit. As referenced *supra*, the ALJ clearly did not "overlook" Dr. Schonberg's report.

---

[5]    The Court further notes Clark cites to no treatment records at all, in the entirety of either of her submissions to the Court. (*See* Doc. No. 12 and 14.)

A careful review of the decision indicates the ALJ referenced Dr. Schonberg's report and observations at least six times in the decision. (Tr. 18, 20, 22, 24.) Further, the ALJ did not "reject" Dr. Schonberg's opinion, as portions of his opinion were incorporated in the RFC.

Therefore, the Court finds the ALJ's failure to explicitly address the opinion of Dr. Schonberg does not constitute a reversible error. Clark's first assignment of error is without merit.

**B.      Second Assignment of Error: State Agency Physician/Hypothetical Question**

Clark next argues the ALJ erred in failing to properly accommodate her moderate limitations in concentration, persistence, and pace. (Doc. No. 12 at 11.) She argues, even though the ALJ afforded "significant weight" to the opinions of the state agency physicians, he "failed to discuss the more specific opinions of the psychological experts and omitted from his determined RFC any limitations on persistence and pace restrictions without providing any rationale for doing so." (*Id*.) Clark maintains the RFC was "inadequate" in addressing concentration, persistence, and pace. (*Id.*) She further asserts because the ALJ failed to include pace limitations in the hypothetical to the vocational expert, "the ALJ failed to meet his burden at Step Five of the Sequential Evaluation Process." (*Id.* at 13.)

The Commissioner argues the ALJ's RFC was supported by the state agency physicians' findings. (Doc. No. 13 at 14.) She asserts the portion of the opinion Clark cites to in her brief did "not constitute an RFC assessment." (*Id*.) Regardless, the Commissioner argues, the "moderate limitations [the state agency physician] found in Section I of the RFC assessment are not inconsistent with the ALJ's RFC finding." (*Id*. at 15.)

The Commissioner further argues Clark is "confus[ing] separate steps of the sequential

evaluation." (*Id.*) She notes the ALJ found moderate limitations in concentration, persistence, and pace at step three, and then limited Clark to simple to moderately complex tasks, superficial social interaction, and a static work environment at step four. (*Id.*) The Commissioner maintains this mental RFC "was consistent with [his step three finding] because it described the functional limitations that arose from Plaintiff's moderate limitations in concentration, persistence, and pace. (*Id.*)

The RFC determination sets out an individual's work-related abilities despite their limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R.§ 416.927(d)(2). An ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R.§ 416.927(d)(3). As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 416.946(c). "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence." *Carter v. Comm'r of Soc. Sec.*, 2012 WL 1028105 at * 7 (W.D. Mich. Mar. 26, 2012) (citing *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. App'x 801, 807 (6th Cir. 2008)).

A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). In fashioning a

hypothetical question to be posed to a VE, the ALJ is required to incorporate only those limitations that he accepts as credible. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (citing *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993)). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Ealy*, 594 F.3d at 516 ("In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments."); *Brooks v. Comm'r of Soc. Sec*., 531 Fed. App'x 636, 644 (6th Cir. Aug. 6, 2013) ("We have stated on a number of occasions that a hypothetical question posed to a vocational expert must include a 'complete assessment of [the claimant's] physical and mental state and should include an accurate portrayal of her individual physical and mental impairments.'") (citing *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002)); *Varley*, 820 F.2d at 779.

Here, the ALJ found Clark had moderate difficulties in concentration, persistence, or pace at step three of the sequential evaluation process. (Tr. 20.) The ALJ explained this finding as follows:

> With regard to <u>concentration, persistence, or pace</u>, the claimant has *moderate* difficulties. The claimant's treating sources do not report any problems in these areas and no notation of over-medication. She had some difficulty with these areas at Dr. Sethi's consultative examination that he determined was due to her medications. (Exhibit 34F). However, at Dr. Schonberg's consultative examination the claimant was only slightly withdrawn and had little difficulty responding to the questions. Speech was normal, and thoughts were logical and goal-directed. Although she had difficulty with serial seven subtraction, she was able to remember three out of three words after five minutes, and both recent and remote memory was intact. The claimant also had no difficulty attending to the hearing. Therefore, considering the affect[sic] her medications would have on her

concentration, as well as the affect [sic] her depression and anxiety has in these areas, the undersigned concludes that the claimant has, at most, moderate restriction in at least one of these three areas.

(Tr. 20-21.)

In discussing the evidence at step four, the ALJ assigned "significant weight" to the state agency psychologists. (Tr. 22.) The ALJ then provided the following discussion:

Mentally, as summarized above, the claimant was able to concentrate and respond appropriately to questions during the psychological consultative examination. Thought processes were logical and goal-directed, and the claimant was able to interpret proverbs. Memory was intact. Her treating/examining physicians did not report any significant difficulties understanding instructions and giving a cogent history. Therefore, she is capable of performing not only simple, routine tasks but also moderately complex repetitive tasks. Her tearfulness and depression would affect her ability to relate to others, but she would be able to relate on a superficial basis, as she has been able to do with her treating physicians, consultants, and at the hearing. And even though the claimant has alleged worsening of her depression and anxiety, the evidence does not show any worsening.

(Tr. 22.) The ALJ also specifically addressed Clark's allegations of concentration deficits:

And even though she alleged having concentration problems, she had no difficulty following at the hearing. She also was able to respond appropriately to the mental status questions and only had difficulty with serial seven subtraction. The only time she was noted to be "slow" was at the internal medicine consultative examination. She has not been slow at her treating physician's office, at the hearing, or at the psychological consultative examination despite her medications.

(Tr. 24.)

The ALJ incorporated the state agency psychologists' opinions regarding Clark's mental functional limitations into the RFC. (Tr. 21-22.) Specifically, the ALJ's RFC determination was as follows:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she would need to avoid concentrated

exposure to fumes, odors, dust, gases, and poor ventilation.  **Mentally, the claimant is limited to simple to moderate complex repetitive tasks, in a static environment, and with no more than superficial social interaction.**

(*Id.*)(emphasis added).

Here, Clark contends the ALJ's RFC determination is inconsistent with the findings made by the state agency physicians and unsupported by substantial evidence, because it failed to include restrictions to accommodate her moderate limitations in concentration, persistence, and pace.  In making this argument, Clark relies on *Ealy v. Commissioner of Social Security,* 594 F.3d 504 (6th Cir. 2010), to support her contention that the ALJ's hypothetical — and RFC — did not sufficiently address her limitations in concentration, persistence, and pace.  (Doc. No. 12 at 11.)

In *Ealy*, the record showed the claimant had a limited ability to maintain attention over time, even when performing simple, repetitive tasks.  *Ealy*, 594 F.3d at 516.  Specifically, a state agency psychological consultant limited the claimant's ability to sustain attention to complete simple repetitive tasks to "[two-hour] segments over an eight-hour day where speed was not critical."  *Id.*  The ALJ, however, limited the claimant only to simple, repetitive tasks without any additional time-based limitations.  The Sixth Circuit found the ALJ failed to adequately capture the claimant's limitations in concentration, persistence, and pace.  *Id.*

As courts within this District have noted, "*Ealy* undoubtedly stands for the proposition that an ALJ's hypothetical to a VE must adequately describe a claimant's limitations in order to serve as substantial evidence in support of the ALJ's conclusions."  *Gonzalez v. Colvin*, 2014 WL 1333713 at * 9 (N.D. Ohio March 28, 2014).  *See also Lupton v. Colvin*, 2016 WL 451359 at fn 4 (N.D. Ohio Jan. 12, 2016);  *Hubbard v. Colvin*, 2013 WL 5466644 at * 17 (N.D. Ohio Sept. 30,

2013); *Harvey v. Colvin,* 2013 WL 1500688, *11 (N.D. Ohio April 10, 2013). However, *Ealy* "does not require further limitations in addition to limiting a claimant to 'simple, repetitive tasks' for every individual found to have moderate difficulties in concentration, persistence, or pace." *Jackson v. Comm'r of Soc. Sec.,* 2011 WL 4943966, at *4 (N.D. Ohio Oct.18, 2011). Rather, "*Ealy* stands for a limited, fact-based ruling in which the claimant's particular moderate limitations required additional speed-and pace-based restrictions." *Id.* at 4.

The record does not support Clark's contention the ALJ erred by failing to incorporate additional restrictions related to her moderate limitations in concentration, persistence, and pace in the RFC and hypothetical. Contrary to Clark's argument, *Ealy* does not create a *per se* rule that an "RFC limitation to routine, simple repetitive tasks fails to adequately address limitations on concentration, persistence, and pace." (Doc. No. 12 at 11.) Rather, *Ealy* stands for the proposition that "simple, repetitive tasks" *may* not be enough to accommodate moderate limitations in concentration, persistence, and pace*,* depending upon the facts of each case. *See Jackson,* 2011 WL 4943966 at *4.

In *Ealy,* the claimant presented specific evidence which established a limited ability to maintain attention, even when performing simple, routine tasks. *Id.* Here, Clark does not point to any evidence in the medical record which would establish greater limitations than assessed by the ALJ. Rather, Clark makes much of the fact that the ALJ purportedly deviated from the findings made by the state agency physicians, and failed to provide reasons for doing so. (Doc. No. 12 at 10, 11.)

In her brief, Clark appears to be referring to state agency psychologist Karla Voyten, Ph.D.'s August 10, 2010 assessment. Specifically, Clark references Section I of Dr. Voyten's

Mental RFC Assessment, which is entitled "Summary Conclusions." (Tr. 925-926.) Within this section, under the "Sustained Concentration and Persistence" portion, Dr. Voyten found Clark was moderately limited in her abilities to:

- Carry out detailed instructions;

- Maintain attention and concentration for extended periods;

- Sustain an ordinary routine without special supervision;

- Work in coordination with or proximity to others without being distracted by them;

- Complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

(*Id.*)

Then, under Section III of the Mental RFC Assessment form, which is entitled "Functional Capacity Assessment," Dr. Voyten provides the following conclusion:

[Claimant] would appear capable of following simple instructions to perform simple and many moderately complex repetitive tasksk[sic] in a relatively static environment with superficial social interaction.

(Tr. 927.)

The ALJ then, in the RFC, limited Clark to "simple to moderately complex repetitive tasks, in a static environment, and with no more than superficial social interaction." (Tr. 22.) This RFC essentially adopts the findings made by Dr. Voyten in her Functional Capacity Assessment. Accordingly, the ALJ appropriately assigned this opinion "significant weight." (*Id.*)

While the ALJ did not add or discuss each specific limit listed under Section I of Dr.

28

Voyten's conclusions, he was not required to do so. The Sixth Circuit has acknowledged Section III is where the actual RFC assessment is recorded, and "Section I is intended for evaluators to record 'summary conclusions.'" *Griffith v. Comm'r of Soc. Sec.,* 582 Fed. App'x 555, 563 (6th Cir. 2014.) In *Griffith,* the Court concluded the "ALJ did not err in creating a hypothetical that solely referenced the Section III assessment." *Id.* Other courts within this Circuit have reached similar conclusions. *See Valez v. Comm'r of Soc. Sec.,* 2010 WL 1487599 at *6 (N.D. Ohio Mar. 26, 2010) ("In general, the decisions have respected the Commissioner's argument the ALJ is not required to include the findings in Section I in formulating residual functional capacity."). *See also Shepard v. Colvin,* 2013 WL 2179366 at *12 (S.D. Ohio May 20, 2013) ("Section I of the form is merely a worksheet for the evaluator and does not constitute the evaluator's residual functional capacity.").

Clark's reliance on *Ealy* is misplaced. In fact, the Court in *Ealy* specifically declined to address the issue of whether an ALJ must include in the hypothetical both the Section III Functional Capacity Assessment, as well as "the more specific checked limitations in Section I." *Ealy*, 594 F.3d at 516. Further, *Ealy* is distinguishable from this matter. In *Ealy,* the ALJ had completely deviated from the findings made by the state agency physician, omitting several restrictions completely. *Id.* Here, the RFC provided for the exact same limitations formulated by Dr. Voyten in Section III of her opinion.

Moreover, the ALJ's hypothetical is supported by substantial evidence. The hypothetical – and RFC – accounted for Clark's moderate limitations in concentration, persistence, or pace by limiting her to "simple to moderately complex repetitive tasks, in a static environment." (Tr. 22.) As noted *supra,* Clark points to no medical evidence which would indicate greater limitations

29

than provided for by the ALJ.  A review of the record indicates Clark did not treat with any

mental health professional.  Rather, she received Xanax through her primary care doctor, Dr.

Frantz.  Dr. Frantz's treatment notes indicated a normal psychiatric examination on numerous

occasions, with occasional reports of increased anxiety and panic.  (Tr.  1072, 1076, 1085, 1090,

1094, 1207, 1221, 1231, 1237, 1241.)  Moreover, Dr. Frantz never made a notation indicating

over medication or issues with processing speed.  Dr. Schonberg, the consultative examiner, did

find Clark had "below average" persistence and pace.  (Tr. 922.)  However, Dr. Schonberg, also

noted Clark "spoke at a normal rate and tone," her "thought processes were logical, coherent, and

goal directed," and she was able to "recall recent and past events without obvious difficulty."

(Tr. 920.)

      The physical consultative examiner, Sushil M. Sethi, M.D., did note Clark "appears to be

very sedated and slow and under the influence of medications."  (Tr. 984.)  However, the ALJ

specifically acknowledged this observation in the decision, and noted "she has not been slow at

her treating physician's office, at the hearing, or at the psychological consultative examination

despite her medications."  (Tr. 24.)  It is clear the ALJ did consider the evidence which would

indicate greater issues with persistence and pace, but also cited to the evidence to the contrary.

Indeed, there is no overwhelming evidence regarding Clark's processing speed or ability to

handle production quotas. Clark also does not cite to any treatment records establishing such.

The limits provided by the ALJ in the RFC properly account for Clark's moderate limitations in

concentration, persistence, or pace and are supported by the substantial weight of the evidence.

      Finally, since the hypothetical question posed to the VE included all of the restrictions

found in the ALJ's RFC, substantial evidence supports the conclusion Clark can perform other

work.  *See Varley*, 820 F.2d at 779; *Ealy*, 594 F.3d at 516.  The Court can then conclude the VE's testimony carries the Commissioner's burden at step five.  *See Arena v. Astrue*, 2012 WL 3637686 at *14, 15 (N.D. Ohio May 16, 2012); *Dickerson v. Astrue*, 2013 WL 453248 at * 2 (N.D. Ohio Feb. 6, 2013).

In sum, the ALJ's hypothetical and RFC are both consistent with Dr. Voyten's opinion, to which the ALJ appropriately gave significant weight.  The ALJ's hypothetical and RFC are also consistent with the substantial weight of the evidence, which reveals minimal mental health treatment and little documentation of any pace or persistence issues.  The ALJ acknowledged some evidence of "slowness" at a physical consultative examination, but then cited all the evidence to the contrary.   As the RFC is both consistent with the opinion of a state agency physician and the medical evidence, it properly accounts for Clark's mental health limitations.

Accordingly, the Court finds the ALJ's hypothetical and RFC are supported by substantial evidence.  Clark's second assignment of error is without merit.


## VII.   CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.


<u>s/Jonathan D. Greenberg</u>
Jonathan D. Greenberg
United States Magistrate Judge

Date: December 22, 2017


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of**

this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).